UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL BAKER,

        Petitioner,         Case Number: 2:12-CV-12068
                                        HONORABLE NANCY G. EDMUNDS

v.

CATHLEEN STODDARD,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Samuel Baker filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner, presently incarcerated at the Carson City Correctional Facility in Carson City, Michigan, challenges his convictions for first-degree home invasion, carjacking, unlawfully driving away an automobile, felonious assault, resisting and obstructing a police officer, carrying a concealed weapon, felon in possession of a firearm, and felony firearm.  He raises five claims for habeas corpus relief.  Respondent argues that two claims are procedurally defaulted and that all the claims are meritless.  The Court finds Petitioner's claims meritless and denies habeas relief.

### I.  Facts

Petitioner's convictions arise from a home invasion at the home of Tracy Hardy in Detroit on March 10, 2008.  Hardy testified that she was at her church, located a few blocks away form her home, on the afternoon of March 10, 2008 when she received a call

from a neighbor that someone was breaking into her home. She quickly drove home, followed by several church members in separate cars. Hardy pulled into her driveway, around the back of her home. She saw a window had been removed from her home and saw two men coming out of the window. Hardy identified one of the men as Petitioner. Petitioner was carrying a television under his arm and the other man was carrying a pillowcase. The men fled when they saw her. So Hardy drove to the street behind her house thinking the men would try to flee through backyards. She saw the men running, and hollered to them that the police were coming. The man who had been carrying the pillowcase dropped it. She retrieved the pillowcase, which she later determined held items taken from her bedroom. Hardy then saw a man she recognized as an undercover police officer seated inside a minivan. As Petitioner and the other perpetrator approached the minivan, the undercover police officer jumped out, identified himself as a police officer, and ordered the men to stop. They did not. As the two men attempted to elude the officer, Hardy heard gunshots. The man who had been carrying the pillowcase was eventually apprehended.

  The undercover police officer, Christopher Staton testified that he saw Petitioner and the other suspect approach his vehicle. He saw Petitioner had a weapon in his left hand. At that point, he thought Petitioner was going to shoot him so he fired his own weapon. Officer Staton did not know whether he struck Petitioner with a bullet. Petitioner jumped into Officer Staton's undercover vehicle and fled at a high rate of speed. Officer Staton alerted dispatch. He was able to apprehend the other suspect.

2

Petitioner was later arrested after abandoning the minivan.

## II. Procedural History

Petitioner was convicted by a jury in Wayne County Circuit Court of first-degree home invasion, carjacking, unlawfully driving away an automobile (UDAA), felonious assault, resisting and obstructing a police officer, carrying a concealed weapon, felon in possession of a firearm, and felony firearm. He was sentenced on December 15, 2008, to 5 to 20 years for first-degree home invasion, 16 to 30 years for carjacking, 1 to 5 years for UDAA, 1 to 4 years for felonious assault, 1 to 2 years for resisting and obstructing, 1 to 5 years for CCW, 1 to 5 years for felon in possession of a firearm, and 2 years for felony firearm.

Petitioner filed an appeal of right in the Michigan Court of Appeals presenting the following claims: (i) the convictions for carjacking and unlawfully driving away an automobile violate the Double Jeopardy Clause; (ii) trial court erred in denying motion for mistrial; (iii) insufficient evidence presented; (iv) sentence violated the Eighth Amendment; (v) improper identification testimony; (vi) counsel was ineffective for failing to investigate possible eye witness; (vii) counsel was ineffective for failing to file a pretrial motion to suppress all in-court identification; and (viii) counsel was ineffective in failing to raise a defense. The Michigan Court of Appeals vacated Petitioner's UDAA conviction and sentence and, in all other respects, affirmed Petitioner's convictions. *People v. Baker*, No. 289844, 2010 WL 2016291 (Mich. Ct. App. May 20, 2010).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court,

raising the same claims raised in the Michigan Court of Appeals. The application was denied. *People v. Baker*, 488 Mich. 914 (Mich. Oct. 26, 2010).

On January 24, 2012, Petitioner filed a motion for relief from judgment in the trial court raising these claims: (i) denied right to public trial; (ii) denied effective counsel at preliminary examination; (iii) Double Jeopardy Clause violated; (iv) multiple charges unfairly joined; (v) ineffective assistance of appellate counsel; and (vi) sentence was based upon inaccurate information. The trial court denied relief from judgment. *See* 5/14/12 Order, ECF No. 15-19. Both Michigan appellate courts denied leave to appeal. *People v. Baker*, No. 312815 (Mich. Ct. App. May 31, 2013); *People v. Baker*, 495 Mich. 913 (Mich. 2013).

Petitioner filed a habeas petition while his motion for relief from judgment was pending in the trial court. The Court held these proceedings in abeyance pending completion of Petitioner's state court collateral proceedings. After completion of collateral review, Petitioner filed an amended petition. He raises these claims:

I. The eyewitness identification at preliminary examination was improper and suggestive identification.

II. The defendant was denied the effective assistance of counsel where counsel failed to properly investigate possible eyewitness.

III. It was error for the trial court to deny defense counsel's motion for a mistrial where the assistant prosecutor argued during rebuttal that the police officer whose vehicle was stolen had taken an oath to serve and protect.

IV. Trial counsel was ineffective where counsel failed to raise any defense.

V. Verdict of guilty based upon insufficient evidence.

### III.  Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979)) (Stevens, J., concurring)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398 (2011).

## IV. Discussion

### A. Identification Procedure

Petitioner's first habeas claim focuses on the admission of identification testimony. He argues that Tracy Hardy's in-court identification was tainted by an impermissibly suggestive identification procedure. Respondent argues that this claim is procedurally defaulted. The Court does not find it necessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ( citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this claim and it is more efficient to proceed directly to the merits.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, — U.S. —, 132 S. Ct. 716, 718 (2012). A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (due process challenges to identification procedures are reviewed using *Biggers'* test). But the Supreme Court has held that suppression of the tainted identification is not necessarily the inevitable consequence. *Brathwaite,* 432 U.S. at 112-113. Instead, the Court has held that determining whether to suppress the identification should be done on a case-by-case basis. *Id.* at 116; *see also Biggers*, 409 U.S. at 201.

The danger is that an initial improper identification procedure will result in misidentification and will unduly influence later investigation. *U.S. v. Wade*, 388 U.S. 218, 229 (1967). "[T]he dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion is the greatest." *Id.* Therefore, "reliability is the linchpin in determining the admissibility of identification testimony. *Brathwaite*, 432 U.S. at 114. A court must undertake a two-step analysis to determine the validity of a pretrial identification. First, the court must determine whether the procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the

8

circumstances to determine whether the identification was nevertheless reliable." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). Where an in-court identification was potentially impacted by an impermissibly suggestive pretrial identification procedure, the governing test is whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199.

The Michigan Court of Appeals (the last state court to issue a reasoned opinion regarding this claim) held that the identification procedure was not impermissibly suggestive and that, even if it had been, Hardy's identification was reliable, stating, in relevant part:

> The record shows that the victim observed defendant from a close distance while in her driveway as defendant climbed out of the window in the back of her house. There was nothing obscuring defendant's face and the encounter took place in broad daylight in the middle of the afternoon. he victim later viewed defendant again around the block, while she was in her car and he was fleeing on foot. Although the victim did not partake in a lineup prior to identifying defendant at the preliminary examination, she had a good opportunity to view defendant and was sure of her identification. In addition, the time between the incident and the preliminary examination was only about three weeks. Therefore, viewed in light of the totality of the circumstances, it is not apparent that the victim lacked an independent basis for her in-court identification, and thus, defendant has not shown that the victim's identification testimony at trial constituted plain error.

*Baker*, 2010 WL 2016291 at *6.

The Court concludes that the state court's determination that the identification procedure was not impermissibly suggestive was not contrary to or an unreasonable

9

application of Supreme Court precedent. Moreover, even assuming that the identification procedure was impermissibly suggestive, Petitioner has failed to show the identification was not reliable. Hardy testified that she saw Petitioner from her driveway as he was carrying her television from the home. She was not far from Petitioner and was also able to describe his clothing and physical build. Hardy also viewed Petitioner multiple times before he fled in the undercover officer's vehicle. Given these circumstances, the Court concludes Petitioner fails to show that the identification was unreliable.

### B. Ineffective Assistance of Counsel Claim

In his second and fourth claims, Petitioner argues that he received ineffective assistance of counsel. He argues that his trial attorney was ineffective in failing to investigate these witnesses: Marvin, Allister, Ross, Davis, Terry, Hardy, Cronyn, and London. He also alleges that counsel failed to present any defense.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

First, Petitioner claims that counsel was ineffective for failing to investigate potential eyewitness testimony from two individuals, Marvin and Allister. Hardy testified that, as she was chasing Petitioner in her vehicle, she called her friends Marvin and Allister because she knew they both carried firearms. They both indicated that they would assist her, but when she caught sight of the undercover police officer, she alerted them to his presence and they went back to their home. The Michigan Court of Appeals held that based upon Hardy's testimony, it was not clear that Marvin or Allister actually saw either of the perpetrators, and it, therefore, was not clear that their testimony would have had any value. *Baker*, 2010 WL 2016291 at *6. Petitioner's claim on habeas review also fails to provide any indication that Marvin or Allister would have provided any evidence favorable to the defense. His claim that counsel was ineffective in failing to

11

investigate them is based upon a mere possibility that their testimony would have been favorable. This conclusory allegation is insufficient to show that the state court's decision was contrary to or an unreasonable application of *Strickland*.

Petitioner also names several other witnesses or potential witnesses counsel was allegedly ineffective in failing to investigate. An ineffective assistance of counsel claim for failure to investigate must be based upon more than mere speculation that further investigation would have been beneficial. *Hodge v. Haberlin*, 579 F.3d 627, 650 (6th Cir. 2009). Petitioner's arguments in support of this claim amount to mere speculation. It is denied on that basis.

Finally, Petitioner argues that counsel was ineffective for failing to present a defense. The Michigan Court of Appeals denied this claim because Petitioner provided no explanation of what defense counsel should have done. *Baker*, 2010 WL 2016291 at *7. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner has failed to attach any offer of proof or any affidavits in support of his claim. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's alleged failure to present a defense. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Moreover, the trial transcript shows that counsel vigorously cross-examined defense witnesses and challenged the prosecutions case where possible. Petitioner's conclusory claim that counsel could have done more is insufficient to show that the Michigan Court of Appeals unreasonably applied *Strickland*.

### C.  Prosecutorial Misconduct Claim

Petitioner argues that the prosecutor committed misconduct by vouching for prosecution witness Officer Christopher Staton during closing argument.  Petitioner objects to the following portion of the prosecutor's rebuttal portion of closing argument:

> Counsel didn't really stress that, that [defendant] was dealing not just with another armed man, but a person [Staton] that has taken an oath to serve and protect, a person that is not the neighbors that [the victim] called, but a person that is there as a person that society pays to serve and protect.

*Baker*, 2010 WL 2016291 at *2.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, — U.S.—, 132 S. Ct. 2148, 2153 (2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden,* 477 U.S. at 181*, quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This Court must ask whether the Michigan Court of Appeal's decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 2155, *quoting Harrington*, 562 U.S. at 103.

The Michigan Court of Appeals denied this claim on the merits, holding, in relevant part:

> Viewing the prosecutor's comments in context, the trial court did not abuse its discretion in concluding that he was not improperly vouching for Staton's credibility. The context in which the prosecutor[] made the statements was in rebuttal to defendant's arguments in his closing argument regarding how Staton had fabricated defendant's possession of a gun in order to justify his own actions in firing at defendant after defendant drove off in Staton's vehicle. Therefore, the prosecutor was responding to defendant's attack on Staton's credibility. Although addressing Staton's oath to protect and serve comes close, the record does not establish that the prosecutor, in fact, vouched for Staton's truthfulness. In addition, otherwise improper prosecutorial remarks generally do not require reversal when they are responsive to issues raised by defense counsel. *People v. Dobek*, 274 Mich. App. 58, 64; 732 N.W.2d 546 (2007). "The doctrine of invited response is used as an aid in determining whether a prosecutor's improper remarks require the reversal of a defendant's conviction. It is used not to excuse improper comments, but to determine their effect on the trial as a whole." *People v. Jones*, 468 Mich. 345, 353; 662 N.W.2d 376 (2003). Under this doctrine, "the proportionality of the response, as well as the invitation, must be considered to determine whether the error, which might otherwise require reversal, is shielded from appellate relief." *Id.* In this case, even if the prosecutor's statements are viewed as improper, the statements were invited and proportional when considering defendant's closing argument, and did not unfairly prejudice defendant. Therefore, the trial court did not err in denying defendant's motion for a mistrial.

*Baker*, 2010 WL 2016291 at *3.

Prosecutors may not vouch for a witness's credibility. Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."

*United States v. Young*, 470 U.S. 1, 18-19 (1985).

The Michigan Court of Appeals recognized the applicable law, including that a prosecutor may not vouch for a witness's credibility or imply that he has some special knowledge about a witness's truthfulness. But found that, in this case, the prosecutor did not imply some special knowledge. "[T]he *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker*, — U.S. —, 132 S.Ct. at 2155, (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Michigan Court of Appeals reasonably disposed of Petitioner's claim. The prosecutor did not imply that he had some special information about Staton's testimony or credibility. Instead, considered in its entirety, the prosecutor's argument asked the jury to consider Staton's motive for testifying. Even if the court of appeals erred, habeas relief would be denied because the Michigan Court of Appeals' decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S., at 103.

### D. Sufficiency of the Evidence Claim

Finally, Petitioner argues that insufficient evidence supported his conviction because only one witness, Officer Staton, testified that he saw Petitioner with a gun and no physical evidence corroborated that testimony.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

15

which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), quoting *Jackson*, 443 U.S. at 324 n.16.

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789.  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

The Michigan Court of Appeals held that Officer Staton's testimony, by itself, was sufficient to establish that Petitioner possessed a firearm.  The state court noted that it was the jury's decision whether to credit Officer Staton's testimony and the prosecutor had no

16

obligation to present corroborating testimonial or physical evidence. *Baker*, 2010 WL 2016291, at *3-4. The Sixth Circuit has recognized that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir.1985). Officer Staton's testimony, thus, was sufficient to support the finding that Petitioner possessed a weapon. *See Brown v. Burt*, 65 F. App'x 939, 944 (6th Cir. 2003) (holding that one witness's unequivocal identification of the defendant as one of the assailants was enough to convict the defendant). Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

## V. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI. Conclusion

17

The petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

                                          s/ Nancy G. Edmunds  
                                          NANCY G. EDMUNDS  
                                          UNITED STATES DISTRICT JUDGE

DATE: May 3, 2016